The next case for argument this morning is United States v. Gates, 21-3314. Good morning, Mr. Brodnick. Good morning, Your Honors. May it please the Court, my name is Tom Brodnick from McNeely Law, and I represent the appellant and the defendant in this case, Travis Gates. Mr. Gates was sentenced in front of Judge Barker where she imposed a 24-month upward variance from the high end of the guideline range for his felon in possession conviction. The high end of the range that was determined by the Court was 18 to 24 months, and she sentenced him to 48 months. Both sides, I think, agree on one thing in this case, and that is that the District Court emphasized that the guidelines don't capture the violent nature of Mr. Gates and the repeated criminal conduct in this case or the nature and circumstances of this offense. The parties, I think, disagree on whether that rationale is accurate or not. But isn't that enough to affirm the District Judge based on the standard of review? If the District Judge says, Mr. Gates, you're lucky to be in criminal history category one, and frankly, kind of is, okay? Isn't that enough under the standard of review to affirm the sentence is substantively reasonable? Your Honor, I don't believe it is, and here's the reason. Here's my argument in a nutshell with regard to this case, is that I think it is clear under Seventh Circuit case law that the further the variance, if you will, upward from the guidelines, then the more compelling justification there needs to be to justify that variance, if you will. But that's certainly true, but Judge Barker gives a pretty comprehensive account. There may be one mistake in it which we can talk about, but she clearly makes the finding that the factors that are baked into the guidelines don't fully describe Mr. Gates individually. And we have said many times that the 3553A factors can be used if a judge comes to that conclusion, if a judge thinks, well, it covers violence, but you were, like, unusually violent. It covers this, and you have more of this or less of that. And there's a pretty thorough explanation of why she goes from 24 to 48 months. Yes, it's double, but it's not like going from 200 to 400. It's 24 to 48. So I'm stuck on the standard of review, too. There's a great deal of discretion to use 3553 exactly as Judge Barker did. So why isn't that the end of this? And the little mistake about which domestic violence problem in the protective order, I just don't see as more than a harmless error. Correct, Your Honor, and I think if I could finish Judge Kirchhoff's question, I think it answers your question as well. As I said, the more significant the variance, then the more compelling the reason needs to be for that variance. Judge Barker specifically stated that the guidelines don't capture this activity. Our argument is that is incorrect. The guidelines do capture that activity, and because the guidelines... But she says enough. I mean, you know, you go on and look at the rest of what she says. She's not saying they don't address it. There's just more with Mr. Gates. Well, our argument is that's just not the case, Your Honor, and the reason that's not the case, I think, is because the guidelines address this activity. But given our standard of review and her thorough explanation grounded in 3553A as to why the guidelines were not sufficient, how do you get around that? Well, I understand it's a tough road to hoe, Your Honor. I'm not saying this is an easy case by any stretch of the imagination. However, what I am saying is that, in our view, because the guidelines do capture that activity, and because Judge Barker has said that they don't, then it is not a sufficiently compelling reason to justify that variance. Clearly, there is an abuse of discretion... What else do you think she should have done? Well, if I can, I'll give you a few examples here with regard to how I believe the guidelines capture this activity. With regard to Mr. Gates, he was in criminal history category one. Now, I know Judge Barker said she thought that was a miracle he was in criminal history category one. Which is an informal way of saying I don't think criminal history category one fully captures your background, throwing cinder blocks through people's cars and shooting at them and all the rest of the things that you do. And a 25-year criminal history, which he started at the age of nine and continued. Eight pages of the pre-sentence report. But we don't see this all that often. You know, criminal history category one, eight's eight. I actually think he did a nice job in the pre-sentence down to where you got it based on probation's recommendation. I think the government was asking for 60 months as well. Well, I appreciate that, Your Honor. However, I guess what I would say to your questions is that his last criminal conduct dates back to 2015. And as we're talking about the violent nature of Mr. Bates and the criminal history category not accurately reflecting his criminal history category, there is a guideline that discusses that. There is a guideline where the court can increase his criminal history category because it's under- But you don't have to do that anymore. You don't have to stick with the guidelines. You can use 3553A. I agree. If the judge is simply not going to abide by those guidelines and not going to rely on those, I guess it's my argument, Your Honor, that that should be said explicitly. And I should know about that. If the judge, the district court, is going to go up based on an under-representation of criminal history category, which I think she clearly did in this case, there is a whole body of case law developed by this court and other courts of appeals as to how far you should go up with regard to under Section 4A, under the guidelines. And I can make an argument to that, if you will. I mean, there's case law that I can rely on, and I can make an argument with regard to those issues. You said you should have been given notice. The fact that the government was arguing for an upward departure here, why wasn't that sufficient notice? It was, Your Honor, but I'm just saying if we have those guidelines, and those guidelines are to mean something, if the court wants to simply say, I'm not going to abide by those guidelines, the district court has put you in this position. They've made it very clear that the guidelines are an anchor point, but the district judges have wide discretion to vary from them, vary up, vary down, you know, vary sideways for all I know. And they've said it over and over again. In fact, it's a point that may be relevant to other cases. And that's exactly what happens. Judge Barker correctly calculates the guidelines, takes a look at it, looks at this giant pre-sentence investigation report, and she just says, you know, my judgment is that you need more, and that more is going to be 48, and she ticks off, you know, the reasons. But that's the process the Supreme Court, Gall and other cases, has laid out. And I see I'm into my rebuttal time, Your Honor, so I'll answer your question and excuse myself. You can wait if you want. Yeah, I believe that if the court is going to do that, it shouldn't depart under criminal history category or for violent behavior or things like that simply by doing it under the guise of Section 3553A. If those activities are covered under the guidelines, then I believe the court should at least discuss those guidelines and say why they are inapplicable or why they are going to ignore them and pose differences under the Section 3553A. Okay, thank you. Thank you, Your Honor. Ms. Domasch. May it please the court, Pamela Domasch for the United States. This court should affirm the district court's sentence. There was no abuse of discretion in the upward variance that Judge Barker gave this defendant. When we look at the factors that Judge Barker listed in giving the upward variance, it's very clear that they're rooted in the 3553A factors. Ms. Domasch, it seems that Judge Barker may have thought that the victim here was the I don't think that is problematic, Your Honor. I believe there is one point in the sentencing transcript where it appears that the district court made a misstatement and referred to the mother of his children rather than the underlying victim in this case. But the pre-sentence investigation report was very clear about that they were two different individuals. And it's also very clear from the court's reasoning that it was the threats against the victim in this case and the uncharged conduct and the escalating violence against the victim in this case that Judge Barker heavily relied upon in that a car window was broken, he tried to set her house on fire, he threatened her with a firearm, he harassed her, he stalked her, he twice fired a gun at her, and he continued to harass her even when police were present. So, but I mean, that may be reason enough to say that this mistake is harmless, but I'm looking, say, at page 57 of the transcript, which was included in the blue brief, and she says things like, you know, she repeats it a number of times, for you to have to be the object of such an infusion of law enforcement resources to try to figure out if you're going to act out on your threats towards a person who is the mother of your children, your ex-girlfriend. And she's talking about love your children from the president of Notre Dame and all of And it seems to have loomed large in her mind, and it just wasn't this time, it wasn't the crime. Your Honor, I think the judge looked more at the totality of this defendant's behavior throughout his criminal history and throughout his life, and certainly made statements that and deterrence, but explicitly when this court imposed this upward variance, the court was very clear on what that upward variance was being imposed upon, and it was the vandalism, the threats, the harassment, the attempted arson, and the stalking and the repeated shooting of this firearm that were done in the mere days before this defendant was arrested. Was there evidence in the record that he had threatened the mother of his children in the past? That evidence in the record was in the pre-sentence investigation report when they talked about the order of protection that had been issued in 2006. Yeah, that's what I thought. I'm looking at that pre-sentence report right now, because I got the gist of the sentencing that what she was saying at this point was, he had told her about the importance of his the children are important to you, but if the children are important to you, you can't treat their mother this way. And she wasn't referring to the specific events that occurred for which he was in front of her, but other events that had occurred in the past involving the mother of his children. I believe that's correct, Your Honor, and I believe that the court's statements were more in, Mr. Gates had talked about his children, and the court is explaining to him how his behavior and his threats towards both in 2016 in the order of protection as alleged there against the mother of his children, and then against this victim in this case, are going to affect his ability to be present with his children and other factors in that sense. But that's not, the idea that there was a reliance on this 2016 order of protection, and that's the reason for the upward variance, I don't think is correct. The record is very clear that it was based on his actions that occurred against the victim in this case, and it's the, the record is clear that it's the vandalism, it's the attempted conduct, the harassment, the stalking, and the firing of the gun that he did against this victim that resulted in the upward variance. There was no... I mean, this looks like a case where he committed a whole lot of state law offenses, and then somebody found a federal hook by saying, oh, there's 922 G, you know, let's go for the felon in possession of a firearm. I'm not, I think that's probably correct, Your Honor. There was a significant safety of protection of the public issue in this case, which is another factor that the district court relied upon in the upward variance, the need to protect the public from this defendant based on his actions. And there was a clear record by the district court. There's no abuse of discretion in this matter, and we ask that this court affirm the district court. Thank you. If there's no further questions. Thank you. Mr. Broderick. Thank you, Your Honor. Very briefly, I did want to make a comment with regard to the comments Judge Barker made about the mother of Mr. Gates' children. It certainly was not just a one-off situation. She indicated that Mr. Gates wasn't good to his children's mother. He couldn't love his children if he didn't love their mother. Children's mother is the most important person in their lives. But what's wrong with that when Mr. Gates is saying, keep me out of prison because I'm a loving father and I want to be with my children? And she's saying in a very motherly way. I mean, we both know Judge Barker very well. We do. She's saying in a very motherly way, look, your behavior has not demonstrated the love for your children that you've expressed to me today, and let me tell you how. And let me tell you, Mr. Gates, why I'm not buying this. But she did it even before Mr. Gates talked about his children. I don't believe it was in response to his children. I think it was part of her sentencing factors, her decision. She referenced those on page 30, 31, 57, 58, and 62. Didn't she also link it to the law enforcement resources that were used in this case? She did. She did mention that, Your Honor. Yes, no question. Something about not you've used all these law enforcement resources, and we have to wonder, Your Honor, if you're going to strike on in violence against the mother of your children. I think there was a reference along those lines. My point is she referenced the mother of his children repeatedly, and in my understanding, those are simply allegations with that protective order. It expired of its own terms. There was no judicial fact-finding as to whether those allegations were correct. And as this Court knows, Mr. Gates has a right to be sentenced upon accurate facts, and therefore, I think her reliance on that protective order and the statements that she made certainly are problematic. Thank you, Your Honor. Thank you. The case will be taken under advisement.